IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

HERBERT MEREDITH,
          Plaintiff,

v.                                Civil Action No. AW-05-2419
                                *ECF-EXEMPT*

WESTWOOD ONE SHADOW
METRO NETWORKS, *et al.*,

          Defendants.

* * * * *

## MEMORANDUM OPINION

This action involves a Title VII suit brought by *pro se* plaintiff Herbert Meredith ("Meredith" or "Plaintiff") against Metro Networks Communications, Inc. ("Metro"), the American Federation of Television and Radio Artists, Washington-Baltimore Local ("AFTRA"), and Patricia M. O'Donnell ("O'Donnell"), AFTRA's Executive Director. In his Complaint, Plaintiff alleges discrimination on the basis of race. Currently pending before the Court is AFTRA's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment [6] The Court has reviewed the entire record, as well as the pleadings with respect to the instant motion. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons stated below, the Court will grant AFTRA's Motion for Summary Judgment.

### I.    FACTUAL & PROCEDURAL BACKGROUND

Meredith, an African-American male, is employed by Metro, a radio broadcasting network, as a "mobile unit spotter." His job involves driving around the Washington, D.C. metro area and

reporting on traffic conditions.[1] In his Complaint, Meredith states that he earns $9.55 per hour, while a white coworker, who is a union member, earns $13.00 per hour or more. Meredith also claims that despite his consistent forty-plus workweeks, he has been denied full-time status and the benefits that accompany it. Meredith also alleges that his white coworker enjoys the use of a much newer automobile and that his employer's promises to replace his aging vehicle have gone unfulfilled.

Meredith filed charges with the Maryland Human Relations Commission, which issued him a denial/right to sue letter on June 9, 2005. On September 7, 2005, Meredith filed his Complaint in this Court. On November 9, 2005, AFTRA filed the instant Motion to Dismiss or, in the Alternative, for Summary Judgment. AFTRA's Motion is now ripe for review.

## II.  SUMMARY JUDGMENT STANDARD

When matters outside the pleadings are presented to the court, a Rule 12(b)(6) motion to dismiss shall be treated as a motion for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56. *Nat'l Mortgage Warehouse, LLC v. Trikeriotis*, 201 F.Supp.2d 499, 502 (D. Md. 2002). Where a party knows that materials outside the pleadings are before the court, that party is considered to have notice that the motion to dismiss may be treated as a motion for summary judgment. *Id.* AFTRA presents affidavits and other outside evidence for the Court's consideration in conjunction with its Motion to Dismiss or, in the Alternative, for Summary Judgment. As such, the Court will treat AFTRA's instant motion as a Motion for Summary Judgment.

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment will be

---

[1] In his December 23, 3005 response to AFTRA's motion to dismiss, Meredith stated that he was out on "workman's comp" after being injured in a traffic accident on December 8, 2005. The Court is unaware of his present employment status.

granted when no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Haavistola v. Cmty. Fire Co. of Rising Sun, Inc.*, 6 F.3d 211, 214 (4th Cir. 1993); *Etefia v. East Baltimore Comm. Corp.* 2 F.Supp.2d 751, 756 (D. Md. 1998). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed.R.Civ.P. 1   The court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine*, 501 U.S. 496, 520 1991) (internal citations omitted). While the evidence of the non-movant is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.* 152 F.3d 326, 330-31 (4th Cir. 1998); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

## ANALYSIS

In his Complaint, Plaintiff alleges that he is paid less than a white coworker who performs the same job as him, and that white coworkers with less seniority than Plaintiff are granted full-time status for working six hours a day, while he kept as part-time despite often working forty-plus hours per week. In essence, Plaintiff has asserted a Title VII wage discrimination claim[2] against Metro, his employer. However, the nature of Plaintiff's claims against AFTRA—an organization of which he

---

[2]In order to establish a *prima facie* case of wage discrimination, Plaintiff must prove that: (1) Plaintiff is a member of a protected class; (2) Plaintiff occupied a job similar to a job occupied by non-members of the protected class; and (3) Plaintiff was paid less than the non-members of the protected class. *Brinkley-Obu v. Hughes Training*, 36 F.3d 336, 343 (4th Cir. 1994). On November 18, 2005, Metro filed an Answer to Plaintiff's Complaint, denying liability.

is neither a member nor an employee—are not entirely clear. AFTRA suggests, and the Court agrees, that the only cognizable cause of action against it that can be distilled from the factual allegations contained in Plaintiff's Complaint is that AFTRA denied him union membership on the basis of race.

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, prohibits discriminatory employment practices by "labor organizations." Specifically, it provides that:

> It shall be an unlawful employment practice for a labor organization -
>
> (1) to exclude or expel from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin;
> (2) to limit, segregate, or classify its membership or applicants for membership, or to classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's race, color, religion, sex, or national origin; or
> (3) to cause or attempt to cause an employer to discriminate against an individual in violation of this section.

42 U.S.C. § 2000e-2(c). However, even if Plaintiff had pled an adequate claim for discrimination under this section, AFTRA has presented evidence that Plaintiff's nonmembership in the union was not the result of racial discrimination. In particular, AFTRA has submitted sworn statements from Patricia O'Donnell, AFTRA's Executive Director, and George Wright, AFTRA's Deputy Executive Director, stating that mobile unit spotters—among them, several white males—were not included in the initial bargaining unit formed when AFTRA began negotiating with Plaintiff's employer in 1998. Instead, the collective bargaining agreement negotiated at that time covered only "on-air" employees. Furthermore, during the 1998 negotiations, Plaintiff did not attend any organizing meetings or request his inclusion in the bargaining unit. In 2000, after a corporate reorganization,

an additional round of labor negotiations commenced. This time, Plaintiff's coworker, Dennis Tafoya, a hispanic male, sought inclusion in the bargaining unit. As a result, the 2000 agreement contained a sideletter stating "the parties agree that Dennis Tafoya, currently a full-time Mobile Unit, is in the bargaining unit, paid as a producer. Persons hired as mobile units in the future will not be in the unit, unless they are seen or heard on air." Plaintiff, however, did not seek to be included in the bargaining unit, and was not covered by the agreement. In January 2002, after Plaintiff contacted the AFTRA office and inquired about his membership status, Plaintiff was sent a packet containing membership application forms. In May 2002, negotiations began for a new collective bargaining agreement, under which AFTRA attempted to negotiate the inclusion of all mobile units into the contract. AFTRA, however, was unsuccessful in obtaining coverage of the mobile units. In December 2002, AFTRA received Plaintiff's completed application forms. AFTRA then contacted Metro to see if it would consent to allow Plaintiff into the bargaining unit. Metro replied that Plaintiff "is currently not covered under the agreement that we have negotiated, and we're not interested in changing that agreement at this time." AFTRA then informed Plaintiff, by letter, of its inability to secure coverage for him and that, consequently, it assumed he was no longer interested in joining AFTRA.[3] Plaintiff did not subsequently contact AFTRA except through his administrative claim and then through this lawsuit.

Based on the foregoing, the Court believes that AFTRA has submitted persuasive evidence that Plaintiff's nonmembership is the result of (1) Plaintiff's failure to seek inclusion in the collective bargaining unit during the 1998 and 2000 negotiations; (2) Metro's refusal, in May 2002, to cover

---

[3]AFTRA states that although Plaintiff had and continues to have the ability to join AFTRA, he would not receive a benefit from doing so because the union lacks the ability to represent him under the AFTRA-Metro collective bargaining agreement.

5

mobile units under the AFTRA-Metro collective bargaining agreement; and (3) Metro's denial, in December 2002, of AFTRA's special request to allow Plaintiff into the bargaining unit. As such, it appears that Plaintiff's dispute is with Metro, not with AFTRA. Furthermore, Plaintiff's response does not challenge any of the assertions set forth above, which leads the Court to conclude that there is no genuine dispute of material fact that would preclude summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (nonmoving party must come forward with specific facts showing there is a genuine issue for trial). Accordingly, the Court will grant the instant motion for summary judgment and dismiss AFTRA and its Executive Director, Patricia O'Donnell, from this case.

## IV.  CONCLUSION

For the reasons stated above, AFTRA's Motion for Summary Judgment [6] is GRANTED. An Order consistent with this Opinion will follow.

March 22, 2006
Date

Alexander Williams, Jr.
United States District Judge